ROBERT S. PERLMUTTER (State Bar No. 183333)
*perlmutter@smwlaw.com*
SARA A. CLARK (State Bar No. 273600)
*clark@smwlaw.com*
SHUTE, MIHALY & WEINBERGER LLP
396 Hayes Street
San Francisco, CA 94102
Tel:   (415) 552-7272
Fax:   (415) 552-5816

DONALD L. SAMUELS (State Bar No. 126287)
*donald.samuels@bryancave.com*
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Tel:   (310) 576-2100
Fax:   (310) 576-2200

Attorneys for Plaintiff
THE CITY OF BEVERLY HILLS

*(Additional counsel on next pages)*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| BEVERLY HILLS UNIFIED SCHOOL DISTRICT<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERAL TRANSIT ADMINISTRATION, *et al.*,<br><br>        Defendants.<br><br>*(More parties on next page)* | Case No. CV 12-9861-GW (SSx)<br>*Consolidated with*<br>No.  CV 13-1144-GW (SSx)<br>        CV 13-8609-GW (SSx)<br>        CV 13-8621-GW (SSx)<br>*Related to*<br>No. CV 16-8390-GW (SSx)<br><br>**JOINT STATUS REPORT RE CERTAIN DOCUMENTS REQUESTED BY PLAINTIFFS** |

THE CITY OF BEVERLY HILLS, a
municipal corporation,

           Plaintiff,

      v.

FEDERAL TRANSIT
ADMINISTRATION, *et al.*,

        Defendants.

PHILIP E. KARMEL (admitted pro hac vice)
*pekarmel@bryancave.com*
BRYAN CAVE LLP
1290 Avenue of Americas
New York, NY 10104-3300
Tel:   (212) 541-2311
Fax:   (212) 541-1413
Attorneys for Plaintiff
THE CITY OF BEVERLY HILLS


LINDA D. KORNFELD (State Bar No. 155765)
*lkornfeld@kasowitz.com*
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
2029 Century Park East, Suite 750
Los Angeles, CA 90067
Tel:   (424) 288-7902
Fax:   (310) 943-3551


JENNIFER S. RECINE (admitted pro hac vice)
*jrecine@kasowitz.com*
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Tel:   (212) 506-1700
Fax:   (212) 506-1800


Attorneys for Plaintiff
BEVERLY HILLS UNIFIED SCHOOL DISTRICT

JOINT STATUS REPORT
No. CV 12-9861-GW (SSx) *Consolidated with* Nos. 13-1144, 13-8609, 13-8621      ii

JOHN C. CRUDEN
Assistant Attorney General
JARED S. PETTINATO, MT Bar No. 7434
Trial Attorney
Natural Resources Section
NORMAN L. RAVE, Jr.
Trial Attorney
Environmental Defense Section
Environmental and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Room 2121
Washington, D.C. 20044-7611
*Jared.Pettinato@usdoj.gov | Norman.Rave@usdoj.gov*
(202) 305-0203 (Pettinato) | (202) 616-7568 (Rave)
(202) 353-0506 (fax)
*Attorneys for Federal Defendants*

As this Court ordered on January 13, 2017, ECF No. 210, the Parties are jointly reporting on their dispute over documents Plaintiffs the City of Beverly Hills and the Beverly Hills Unified School District seek.

## I.      Plaintiff City of Beverly Hills Report

As reported in the Joint Status Reports dated October 17, 2016 (ECF 193) and December 20, 2016 (ECF 206), the City of Beverly Hills has requested the following documents from the Federal Transit Administration ("FTA") and the Los Angeles County Metropolitan Transportation Authority ("Metro")[1]:

> Current plans, diagrams, or other documents detailing the location, configuration, and equipment placement for the Project's Constellation Station construction lay-down area; [and] [t]he anticipated emission rates of PM, NO[2], and NO$_2$ from all sources at the Project's Constellation Station construction lay-down area during all phases of construction and the analysis substantiating such emission rates.

ECF 193-3, at 3.   The City requested these documents from the Department of Justice, as the Federal Defendants' litigation counsel, in connection with this Court's remand Order requiring preparation of an SEIS.  *See* Dkt. 193-1 (October 11, 2016 letter from City's litigation counsel to Department of Justice).  To drive home the City's need for the documents, the City also submitted a FOIA request to the FTA and a Public Records Act

---

[1]   Metro's counsel were copied on drafts of this Joint Status Report but declined to participate in the process, directing that its counsels' names be removed from this filing.

[2]   Nitrogen oxide (NO) – the principal gas that together with nitrogen dioxide (NO$_2$) comprises the family of chemicals known as nitrogen oxides (NO$_x$) – is a precursor to ambient NO$_2$ concentrations, for which the U.S. Environmental Protection Agency (EPA) has promulgated a National Ambient Air Quality Standard (NAAQS).  *See generally* EPA, Revision to the Guideline on Air Quality Models: Enhancements to the AERMOD Dispersion Modeling System, 82 Fed. Reg. 5,182, 5,189 (Jan. 17, 2017); 40 C.F.R. § 50.11.

request to Metro, but the submission of FOIA and PRA requests does not deprive this Court of jurisdiction to order production of the requested documents pursuant to its remand Order or Fed. R. Civ. P. 34 and/or 45.  This Court has previously exercised its authority to require the production of relevant documents not included in the administrative record.  *See* Dkt. 153.

The City needs this information to meaningfully participate in the public comment period on the draft supplemental environmental impact statement ("DSEIS"). As the Court is now aware, Metro and FTA have decided to use the construction lay-down area immediately adjoining Beverly Hills High School (the "High School") as the epicenter for the construction activity required for 2.5 miles of tunneling beneath the City of Beverly Hills.  According to information made available as a result of earlier discovery, Metro's construction logistics plan calls for the mine shaft to be used to excavate 396,000 cubic yards of soil from the 2.5 miles of tunneling to be located as near as 10 feet from the High School campus.  ECF No. 160-1 ¶ 4(c), ECF No. 160-4 at 54:1–57:3.[3]  As a result, among the issues this Court has required FTA and Metro to assess in the DSEIS is whether the particulate matter ("PM") and nitrogen oxide ("$NO_x$") emissions for these soil excavation, handling, processing and hauling activities in close proximity to the High School ball fields would pose a threat to public health (per 40 C.F.R. § 1508.27(b)(2)) and thus would constitute a "constructive use" of the ball fields, implicating Section 4(f) of the Department of Transportation Act and the requirement to assess the feasibility of alternative locations for the construction work, at a greater distance from the High School.  *See* ECF 188 (Order setting forth scope of issues to be assessed in the SEIS).

---

[3]   The logistics plan contradicts FTA's earlier representation that construction will take place "away from sensitive receptors."  FTA Mem., p. 52, lines 26-27 (ECF 115-1 at 74 [ECF pagination]).

1      The documents the City of Beverly Hills has requested as to the location of the

2 pollutant emission sources within the construction lay-down area, and the emission rates,

3 are needed for the City to determine whether the intensive construction activities adjacent

4 to the High School will endanger the health of the High School students and staff and the

5 ability of City residents to use the High School ball fields for recreation during the years

6 of construction activity.  The public health analysis starts with knowing the location of

7 the emission sources and the emission rates and then uses dispersion modeling to

8 determine whether the resulting pollutant concentrations at the locations of human

9 exposure exceed health standards.[4]

10      FTA has cited "deliberative process" privilege as its basis for refusing to provide

11 the City with a copy of the requested documents.  ECF 206-5, at 3.  According to FTA,

---

[4] The technique for converting emission estimates into estimates as to impacts on air quality is to perform "dispersion modeling" to translate emission estimates in "pounds per day" to concentration levels in the air and then to compare the resulting concentration levels in the air to the NAAQS.  *See*, *e.g.*, EPA, *Reflecting the Revised PM2.5 National Ambient Air Quality Standard in NEPA Evaluations* (June 25, 2007) (https://www.epa.gov/sites/production/files/2014-08/documents/revised-pm2-5-naaqs-nepa-pg.pdf); EPA's Guideline on Air Quality Models (published at 40 C.F.R. Part 51, Appendix W).  Metro's environmental consultant, in its report titled *Final Construction and Mitigation Technical Report*, stated that this approach should be used for assessing the air quality impacts of construction emissions:

> The Clean Air Act requires EPA to set the NAAQS for widespread pollutants with numerous and diverse sources considered to be harmful to public health and the environment.  The EPA has promulgated NAAQS for six air pollutants: sulfur dioxide ($SO_2$), particulate matter ($PM_{25}$ and $PM_{10}$), nitrogen dioxide ($NO_2$), carbon monoxide (CO), ozone ($O_3$), and lead.  The Act required EPA to review the scientific data upon which the standards are based, and revise the standards, if necessary, every five years.  *Effects of construction emissions on ambient air quality are evaluated using these standards*.

AR12688 (emphasis added, footnote omitted).

1    the information that the City has requested is privileged because it is being used to

2    prepare the DSEIS.  *Id.*  In response, the City states as follows:

3        1.    Absent unusual circumstances, factual documents are not subject to the

4    deliberative process privilege.  *See* EPA v. Mink, 410 U.S. 73, 87-88 (1973) ("[I]n the

5    absence of a claim that disclosure would jeopardize state secrets, memoranda consisting

6    only of compiled factual material or purely factual material contained in deliberative

7    memoranda and severable from its context would generally be available for discovery by

8    private parties in litigation with the Government."); Petroleum Information Corp. v. U.S.

9    Dep't of the Interior, 976 F.2d 1429, 1437-38 (D.C. Cir. 1992) (requiring disclosure of

10   "essentially technical" factual information); Southwest Center for Biological Diversity v.

11   U.S. Dep't of Agriculture, 170 F. Supp. 2d 931, 940 (D. Ariz. 2000) (disclosure of factual

12   information about birds would not have an adverse effect on agency decision-making

13   processes).  These cases are consistent with the dictum that "Congress intended [FOIA]

14   Exemption 5 to be as narrow[] as [is] consistent with efficient Government operations."

15   FTC v. Grolier, Inc., 462 U.S. 19, 23 (1983) (internal quotations omitted, alterations in

16   original).

17       2.    Even if the documents sought were cloaked by the deliberative process

18   privilege, nondisclosure "is not automatic."  Texaco P.R. Inc. v. Dep't of Consumer

19   Affairs, 60 F.3d 867, 885 (1st Cir. 1995).  "The deliberative process privilege is a

20   qualified privilege and can be overcome by a sufficient showing of need."  In re Sealed

21   Case, 121 F.3d 729, 737 (D.C. Cir. 1997).  Thus, "[e]ach time [the deliberative process

22   privilege] is asserted the district court must undertake a fresh balancing of the competing

23   interests, taking into account factors such as the relevance of the evidence, the

24   availability of other evidence, the seriousness of the litigation, the role of the government

25   and the possibility of future timidity by government employees."  Id. at 737-38 (internal

26   quotation marks omitted); *see also* Center for Biological Diversity v. Norton, 2002 WL

27   32136200 at *3 (D. Ariz. 2002) (a litigant "may obtain deliberative materials if his or her

28

1  need for the materials and the need for accurate fact-finding override the Government's

2  interest in non-disclosure").  Here, the City needs the factual information it has requested

3  to assess the public health implications of the decision by FTA and Metro to locate the

4  most intensive construction activity for Phase 2 only ten feet from the High School, and

5  the data are not available from any other source.

6        3.     Finally, once incorporated into the air quality analysis to be published as part

7  of the DSEIS, the requested factual information would lose its alleged "pre-decisional"

8  character and any alleged "deliberative process" privileged would be waived.  NLRB v.

9  Sears, Roebuck & Co., 421 U.S. 132, 161 (1975) (waiver of privilege when an agency

10  chooses expressly to adopt or incorporate by reference in its final decision an intra-

11  agency memorandum previously covered by Exemption 5); Bristol-Myers Co. v. FTC,

12  598 F.2d 18, 23 (D.C. Cir. 1978) (same).  Accordingly, even if this Court were to hold

13  that the factual materials at issue should not be disclosed to the City at this time, the

14  Court should require the documents to be disclosed to the City at the time that FTA

15  releases the DSEIS for public comment.

16        4.     Finally, Metro has no basis for withholding the requested documents

17  because they are not privileged under California law.  The case law governing the

18  deliberative process privilege under the Public Records Act is patterned on federal case

19  law interpreting Exemption 5 under FOIA.  *See, e.g.,* Times Mirror Co. v. Superior Court,

20  53 Cal.3d 1325, 1339-42 (1991).   The burden is on the party seeking to prevent

21  disclosure to demonstrate why the documents should not be disclosed.  Thus, "[n]ot every

22  disclosure which hampers the deliberative process implicates the deliberative process

23  privilege….  Only if the public interest in nondisclosure clearly outweighs the public

24  interest in disclosure does the deliberative process privilege spring into existence."

25  California First Amendment Coalition v. Superior Court, 67 Cal. App. 4th 159, 172

26  (1998).  Moreover, "[t]he exemptions in the Public Records Act are in the context that,

27  unless exempted, all public records may be examined by any member of the public, often

28

1    the press, but conceivably any person with no greater interest than idle curiosity.  (Cal.

2    Gov. Code, §§ 6252, subd. (f), 6253, subds. (a), (b), 6258.)  But "*a party to pending*

3    *litigation* has a stronger and different type of interest in disclosure."  Marylander v.

4    Superior Court, 81 Cal. App. 4th 1119, 1125 (2000) (emphasis in original) (reversing trial

5    court decision to deny production of state agency memorandum to the Governor's office

6    and directing court on remand to balance the competing interests in disclosure).

7    **II.    Plaintiff Beverly Hills Unified School District's Report**

8         As previously reported to the Court in the Joint Status Reports dated October 17,

9    2016 (ECF 193) and December 20, 2016 (ECF 206), the Beverly Hills Unified School

10   District ("BHUSD") submitted multiple FOIA requests to FTA in October 2016 for

11   documents necessary for BHUSD to participate in the upcoming public comment period

12   for the DSEIS.  While FTA provided written responses to each of BHUSD's FOIA

13   requests, FTA is withholding documents responsive to five of BHUSD's FOIA requests,

14   citing the deliberative process privilege.

15        Specifically, FTA is withholding production of the following categories of

16   documents responsive to BHUSD's FOIA requests:

17        1.   Documents reflecting the anticipated emission rates of PM, NO, and $NO_2$ from

18             all sources during all phases of Project construction at the Constellation

19             construction lay-down area, and the analysis substantiating such anticipated

20             emission rates (ECF 206-14 at 2);

21        2.   Current  plans, diagrams, or other documents detailing the location,

22             configuration, and equipment placement for the Constellation Station

23             construction lay-down area (ECF 206-15 at 2);

24        3.   Any technical review, report, analysis or correspondence by the FTA's PMOC

25             or other FTA agents or staff related to the FTA's and Metro's decision to add a

26             seismic tunnel section to the Phase 2 Design/Build scope of work (ECF 206-10

27             at 3);

28

4. Current drafts of the DSEIS or any component subparts (206-4 at 3); and

5. All records relating to requests by Metro for financial assistance for Section 2, including but not limited to funds from the Capital Investment Grant program; Any application submitted by or on behalf of Metro for financial assistance for Section 2; Any plan or proposed plan submitted to FTA by or on behalf of Metro in connection with a request for federal financial assistance which describes the financial condition of Metro, and its capacity to complete the Project and maintain and operate the Project together with Metro's existing transit system (Exhibit 1, FTA Response to FY17-0028, at 2).

BHUSD adopts and joins in the City of Beverly Hills' substantive response to FTA's assertion of the deliberative process privilege. *See* Section I, *supra*.

In addition to the withheld documents listed above, FTA further claims not to have any documents responsive to the requests identified below:

1. Track alignment charts and full tunnel cross-sections and profile drawings for the Los Angeles Metro Rail Red Line and Purple Line Systems from the Los Angeles yards to the terminus of each system (ECF 206-11);

2. The composition of any PMOC engaged to review the SEIS (ECF 206-4);

3. The ridership model and all inputs being used to support any ridership analysis to be contained in SEIS (ECF 206-12);

4. Documents relating to work performed by Fehr & Peers Transportation Consultants on the Project, specifically including the Fehrs & Peers contract, work orders, emails, letters and reports (ECF 206-13);

5. All approved versions between 1993 and present day of Metro's Rail Design Criteria, and any approved deviations to LACMTA's Rail Design Criteria between 1993 and present day (ECF 206-9);

6. Documents related to the FTA's and Metro's decision to add a seismic tunnel section to the Phase 2 Design/Build scope of work, including:

Field surveys of boring locations and grade; Communications, including email correspondence, between and among those Amec Foster Wheeler representatives initialing the boring logs, those Amec Foster Wheeler representatives signing off on final reports with a stamp indicating they were "responsible charge of the work," and Amanda Elliot, relating to the boring logs or final reports; Agendas and minutes from any meetings of Amec Foster Wheeler representatives or other LACMTA contractors or consultants relating to boring logs, geologic assessment and analysis, or final reports; Documents relating to Quality Assurance/Quality Control Procedures for the borings; Report review comments by Amec Foster Wheeler representatives or other LACMTA contractors or consultants relating to the borings; Final boring logs; Laboratory testing and analysis not already included in the Design/Build procurement addenda including but not limited to radio carbon dating; Geologic reports related to stratigraphy, soil dates, and seismicity; Communication among geologists related to LACMTA's investigation; Communication and reports related to the determination of fault location and activity; and Communication and reports related to the tunnel seismic movement criteria included in the Design/Build procurement addenda (ECF 206-10);

7. Purple Line Extension Segment 1 Design/Build Schedule of Values; Segment 1 Independent Cost Estimate; Segment 1 value engineering study that eliminated crossover and reduced rolling stock (ECF 206-6);

8. Regional Connector Project Design/Build Schedule of Values, Independent Cost Estimate, and Value Engineering Studies (ECF 206-7);

9. Crenshaw/LAX Transit Project Design/Build Schedule of Values, Independent Cost Estimate, and Value Engineering Studies (ECF 206-8).

1   FTA has access to these documents through Metro, but refuses to obtain them from

2   its co-lead agency and produce them to BHUSD.  It should be noted that BHUSD also

3   requested these documents from the Department of Justice, as the Federal Defendants'

4   litigation counsel, in connection with this Court's remand Order requiring preparation of

5   an SEIS.  *See* Dkt. 193-2 (October 11, 2016 letter from BHUSD's litigation counsel to

6   Department of Justice).  BHUSD also submitted a FOIA request to the FTA and a request

7   to Metro, but the submission of these requests does not deprive this Court of jurisdiction

8   to order production of the requested documents pursuant to its remand Order or Fed. R.

9   Civ. P. 34 and/or 45.  This Court has previously exercised its authority to require the

10  production of relevant documents not included in the administrative record.  *See* Dkt.

11  153.

12  BHUSD also has an outstanding request to Metro that it provide BHUSD's

13  geologists with access to core samples taken by Metro's geologists during the 2015 and

14  2016 seismic fault investigations for Sections 2 and 3 of the Project.  *See* Exhibit 2,

15  January 9, 2017 Letter from J. Recine to R. Stamm.  BHUSD's request is consistent with

16  Metro's prior sharing of seismic investigation data with BHUSD prior to Metro's release

17  of public reports.  Indeed, physical, side-by-side, geological comparisons of core samples

18  are part of geological best practices, and BHUSD's prior access to Metro's core samples

19  from the Century City Fault Investigation resulted in the resolution of various

20  inconsistencies between Metro's geologists' boring logs and the actual core samples.

21  Access to the core samples is critical to BHUSD's ability to review and analyze the

22  results of Metro's seismic fault investigations, and provide comments.

23  FTA's demonstrated practice of hiding behind the deliberative process privilege

24  and claiming that Metro, not it, is the party with possession of the requested documents

25  has resulted in an untenable situation on remand where BHUSD is being deprived of

26  critical important it needs to meaningfully participate in, and comment upon, the

27  agencies' SEIS analysis.

28

1     Accordingly, BHUSD respectfully submits that the Court should assert
2  jurisdiction over Metro to safeguard the process on remand and ensure the sharing of
3  information.  If the Court is inclined to dismiss BHUSD's case against Metro and deny
4  BHUSD's pending motion to consolidate the actions, BHUSD requests that it be granted
5  leave pursuant to FRCP Rule 15 to amend the complaint against FTA to add Metro as a
6  defendant.  While Metro claims that BHUSD lacks an independent cause of action
7  against it in a separate action, Metro concedes that it may be a party to a NEPA claim
8  against a federal agency.  *See* Beverly Hills Unified School District v. Los Angeles
9  County Metropolitan Transportation Authority, 2:16-cv-8390-GW-SS, ECF 37 at 6-7.

10     "Rule 15 mandates that leave to amend be freely granted whenever justice requires.
11  This policy is applied with "extraordinary liberality." Dorfman v. Massachusetts Cas.
12  Ins. Co., No. CV1506370MMMASX, 2015 WL 7312413, at *2 (C.D. Cal. Nov. 19,
13  2015), quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.
14  1990).  "Only where prejudice is shown or the movant acts in bad faith are courts
15  protecting the judicial system or other litigants when they deny leave to amend a
16  pleading." Howey v. United States, 481 F.2d 1187, 1191 (9th Cir. 1973).  "[D]elay alone
17  no matter how lengthy is an insufficient ground for denial of leave to amend." U.S. v.
18  Webb, 655 F.2d 977, 980, (9th Cir. 1981).

19     Alternatively, this Court could, sua sponte, add Metro as a party to the action
20  against FTA, pursuant to Federal Rule of Civil Procedure 21, which provides:
21  "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own,
22  the court may at any time, on just terms, add or drop a party. The court may also sever
23  any claim against a party."  Such joinder is appropriate "when all parties needed for just
24  adjudication are not before the court." Flintkote Co. v. Aviva PLC, No. 15-CV-01638-
25  SI, 2015 WL 9269761, at *2 (N.D. Cal. Dec. 21, 2015); *see also* Merchants Nat'l Bank of
26  Winona v. Hartford Accident & Indem. Co., 377 F.Supp. 1344, 1345 (D. Minn. 1974)
27  ("When one is so involved in an action as to be considered an indispensable and

28

necessary party to the litigation, yet he has not been made a party to the action, the court must sua sponte join that party to the lawsuit."); <u>Du Shane v. Conlisk</u>, 583 F.2d 965, 967 (7th Cir. 1978) (sua sponte adding party after judgment for remedial purposes); <u>Comcast of IL X v. Multi-Vision Elecs.</u>, Inc., 504 F. Supp. 2d 740 (D. Neb. 2007) (under FRCP 21, a party can be added sua sponte by the court after judgment for remedial purposes, so long as the party is given sufficient notice and an opportunity to defend its interests.). Sua sponte joinder of parties has been deemed appropriate in the NEPA context.  *See* <u>Friends of DeReef Park v. Nat'l Park Serv.</u>, No. 2:13-CV-03453-DCN, 2014 WL 6908976, at *2 (D.S.C. Dec. 8, 2014) (joining landowner under Rule 21 because the landowner had important rights at stake in the litigation, and joining the landowner would "allow it to assert its rights, thereby promoting judicial economy and substantial justice"); *see also* <u>City of Syracuse v. Onondaga Cty.</u>, 464 F.3d 297, 309 (2d Cir. 2006) (in Clean Water Act action, court joined city as defendant, more than three years after an amended judgment in the action was negotiated, because the City had been "involved, to a limited extent in this litigation" and had "participated in or had an opportunity to participate in several discussions regarding the remedial measures to be implemented under the consent decree.").

## III.    Federal Transit Administration's Report

The Parties have already reported on the City's and the District's FOIA and Public Records Act Requests in both joint status reports. Joint Status Report (Oct. 17, 2016), ECF No. 193; Joint Status Report (Dec. 20, 2016), ECF No. 206. Nothing has changed, except that the FTA has responded to one more FOIA request that the District made. Exhibit 1, FTA Response to FY17-0028.

The United States objects to the City and the District filing legal briefs as part of this joint report on this abbreviated time frame. The Court requested a status report on the dispute, nothing more. Neither the City nor the District filed a motion seeking the relief

they raise in this status report. To the extent they attempt to use this status report as a request for any relief, Federal Rule of Civil Procedure 7(b) requires them to file a motion and to give the FTA adequate opportunity to fully and fairly respond. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."). In light of the very short time frame on which the Court requested the Parties to file this status report, the FTA has not had a full and fair opportunity to respond to the City and District's many arguments presented in their portions of the report. The FTA is reporting on the status of the dispute and its position, as the Court requested; it reserves its right to respond in detail in response to any motion and arguments the City or the District may make, when and if they file any motion.[5]

     A.    FTA's Response to the City of Beverly Hills

     The City has no factual basis for stating it "needs this information to meaningfully participate in the public comment period . . . ."[6] The FTA intends to give the City and the

_____

[5] The Los Angeles County Metropolitan Transportation Authority is not a party to these lawsuits, and the FTA lacks authority to speak on its behalf. Therefore, it is not responding to the fourth section of the City's report.

[6] In response to the City's request, referenced above, the FTA stated:

> Since current information for the Constellation Station is still being developed as part of the draft Supplemental Environmental Impact Statement, the documents that FTA does have are being withheld under Exemption 5, of the FOIA, 5 USC § 552(b)(5), as implemented by the Department of Transportation's regulations, 49 CFR § 7.13(c)(5). This includes a draft 2015 letter with preliminary information wish is also being withheld under Exemption 5. Exemption 5 incorporates the deliberative process privilege. The basis for the privilege is to protect these working documents and to encourage open, frank exchange of opinions and recommendations between government personnel, to protect against premature disclosure of proposed policies before they are finally adopted, and to protect against public confusion that might result from disclosure of reasons and rationale that are not in fact ultimately the grounds for an agency's action.

(footnote continued)

1   District and the public (a) equal access to documents and materials for commenting on

2   the draft supplemental environmental impact statement (EIS) and (b) equal time for

3   providing comments. NEPA regulations have already defined the time period for

4   reviewing a draft EIS. They require the FTA to give everyone forty-five days to comment

5   on the Draft SEIS. *See* 40 C.F.R. § 1506.10(c). That includes the City and the District.

6       FOIA requires requestors to follow a particular administrative process for

7   objecting to FOIA agency determinations, but here, the City has failed to demonstrate

8   that it has exhausted its administrative remedies or otherwise demonstrated any right to

9   judicial review in this case. *See* 5 U.S.C. § 552(a)(6)(C); *In re Steele*, 799 F.2d 461, 465

10  (9th Cir. 1986) ("Exhaustion of a parties' administrative remedies is required under the

11  FOIA before that party can seek judicial review."); *see Ross v. Blake*, 136 S. Ct. 1850,

12  1857 (2016) ("mandatory exhaustion statutes . . . establish mandatory exhaustion

13  regimes, foreclosing judicial discretion.").

14      B.      Response to the Beverly Hills Unified School District

15      The District makes detailed arguments on the particular requests it has made and

16  the agencies' responses to those requests. It expects this Court to sift through them and to

17  rule on its FOIA arguments now. But the District never filed a FOIA case; it filed a

18  NEPA case. The District has no right to relief under FOIA in this case. *See* Order 4 (Jan.

19  12, 2017) (denying the District's motion for a preliminary injunction because "none of

20  the claims Plaintiff has raised in its Amended Complaint in this case are founded upon

21  those statutes/regulations/guidance." (citations omitted)).

22      Moreover, the District is making a Rule 15 motion *for a separate case* as part of its

23  report. That request not only exceeds the Court's direction to limit the report to the status

24

25  Letter from Nancy Sipes, FTA Office of Management Planning, to Sara A. Clark, Shute,

26  Mihaly & Weinberger LLP (Nov. 16, 2016), ECF No. 206-5 at 3.

27

28

of the FOIA requests, but also requests relief in the wrong case. The Court only ordered this report in the cases against the FTA. Order (Jan. 12, 2017), ECF No. 210. This Court lacks jurisdiction over Metro in the other case and certainly here. *See Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). The District is simply seeking to back-door jurisdiction against Metro.

C.   Conclusion

The City surprised the FTA by raising this FOIA issue as part of the hearing on the District's motion for a preliminary injunction. The District then piled on by raising, on the due date for this report, new FOIA arguments that it had never raised with FTA. Federal Rule of Civil Procedure 7(b) prohibits those practices. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("The theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush."). To the extent the City or the District seek some particular relief as part of this NEPA case, the FTA respectfully requests the Court to require the City and the District to file motions and to afford the FTA a full and fair opportunity to respond and brief the arguments presented by them. *See* Fed. R. Civ. P. 7(b).

Respectfully submitted this January 18, 2017,

*/s/ Sara A. Clark*
ROBERT S. PERLMUTTER (State Bar No. 183333)
*perlmutter@smwlaw.com*
SARA A. CLARK (State Bar No. 273600)
*clark@smwlaw.com*
SHUTE, MIHALY & WEINBERGER LLP
396 Hayes Street
San Francisco, CA 94102
Tel:   (415) 552-7272
Fax:   (415) 552-5816

DONALD L. SAMUELS (State Bar No. 126287)
*donald.samuels@bryancave.com*
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Tel:   (310) 576-2100
Fax:   (310) 576-2200

PHILIP E. KARMEL (admitted pro hac vice)
pekarmel@bryancave.com
BRYAN CAVE LLP
1290 Avenue of Americas
New York, NY 10104-3300
Tel:   (212) 541-2311
Fax:   (212) 541-1413

Attorneys for Plaintiff
THE CITY OF BEVERLY HILLS,
a municipal corporation

LINDA D. KORNFELD (State Bar No. 155765)
lkornfeld@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
2029 Century Park East, Suite 750
Los Angeles, CA 90067
Tel:   (424) 288-7902
Fax:   (310) 943-3551

*/s/ Jennifer S. Recine*
(*Signed by filing attorney with written permission
provided on January 18, 2017*)
JENNIFER S. RECINE (admitted pro hac vice)
jrecine@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Tel:   (212) 506-1700
Fax:   (212) 506-1800

Attorneys for Plaintiff
BEVERLY HILLS UNIFIED SCHOOL DISTRICT

JOHN C. CRUDEN
Assistant Attorney General

*/s/ Jared S. Pettinato*
(*Signed by filing attorney with written permission
provided on January 18, 2017*)
JARED S. PETTINATO, MT Bar No. 7434
Trial Attorney
Natural Resources Section
NORMAN L. RAVE, Jr.
Trial Attorney
Environmental Defense Section
Environmental and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Room 2121
Washington, D.C. 20044-7611
Jared.Pettinato@usdoj.gov | Norman.Rave@usdoj.gov
(202) 305-0203 (Pettinato) | (202) 616-7568 (Rave)
(202) 353-0506 (fax)
*Attorneys for Federal Defendants*

OF COUNSEL for Federal Defendants:

U.S. Department of Transportation
Office of Chief Counsel
PAUL M. GEIER
Assistant General Counsel for Litigation
PAULA LEE
Trial Attorney
Washington, D.C.

NANCY-ELLEN ZUSMAN
Assistant Chief Counsel
Office of Chief Counsel
Federal Transit Administration
Chicago, IL

1

2   MARTIA FOX
    Regional Counsel for Region 9
3   MINMING WU
    Assistant Regional Counsel for Region 9
4   Office of Chief Counsel
    Federal Transit Administration
5   San Francisco, CA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1



U.S. Department                    Headquarters                    1200 New Jersey Avenue S.E.
Of Transportation                                                  Washington DC 20590
**Federal Transit**
**Administration**                                                 December 22, 2016


Jennifer S. Recine
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019


Our File No.: FY17-0028

Dear Ms. Recine:

This letter is in response to your letter of October 31, 2016, requesting information under
the Freedom of Information Act (FOIA). Specifically, you requested copies of the
following records pertaining to the Westside Subway Extension (Purple Line) project (the
'Project') in Los Angeles, California:

"1) The Full Funding Grant Agreement (complete with all attachments) between the
United States Federal Transit Administration ('FTA') and the Los Angeles County
Metropolitan Transportation Authority ('LACTMA') for Section 2 of the Project.

2) All Records relating to requests by LACMTA for Federal Financial Assistance for
Section 2 of the Project, including but not limited to funds from the Capital Investment
Grant program.

3) Any application submitted by or on behalf of LACMTA for a Full Funding Grant
Agreement for Federal Financial Assistance for Section2 of the Project.

4) Any plan or proposed plan submitted to the FTA by or on behalf of LACMTA in
connection with a Full Funding Grant Agreement, accepted or to be accepted by the
Federal Government, including the United States of America and/or the United States
Department of Transportation and/or the FTA as part of an Application for Federal
financial assistance for support of the Project describing the financial condition of
LACMTA, and its capability to complete the Project and to maintain and operate the
Project together with LACMTA's existing transit system (FINANCIAL PLAN)."

A search of the FTA files has disclosed documents which are responsive to your request,
which are enclosed. FTA is withholding some material under Exemption 5, of the FOIA,
5 USC § 552 (b)(5), as implemented by the Department of Transportation's regulations,

49 CFR § 7.13(c)(5).  Exemption 5 incorporates the deliberative process privilege.  The basis for the privilege is to protect these working documents and to encourage open, frank exchange of opinions and recommendations between government personnel, to protect against premature disclosure of proposed policies before they are finally adopted, and to protect against public confusion that might result from disclosure of reasons and rationale that are not in fact ultimately the grounds for an agency's action.  The persons responsible for this determination are the undersigned and Linda Watkins Sorkin, an attorney in FTA's Office of Chief Counsel.  FTA is soliciting other potentially responsive documents from other agencies within DOT. If/when those documents become available, FTA will forward them on to you.

To the extent that some of the material is being withheld, this is a partial denial of your request.  If you are not satisfied with this response, you may appeal by writing to the Deputy Administrator of the Federal Transit Administration, 1200 New Jersey Avenue, S.E., East Building, 5th Floor, Washington, D.C. 20590.  If you prefer, your appeal may be sent via electronic mail to FTA.FOIA.Appeals@dot.gov.  An appeal must be received within ninety calendar days from the date the initial determination is signed and should include the FTA file or reference number assigned to the request and any information and arguments upon which you may wish to rely. The envelope in which a mailed appeal is sent or the subject line of an appeal sent electronically should be prominently marked "FOIA APPEAL."  The Deputy Administrator's determination will be administratively final.

Sincerely,

Nancy Sipes
Office of Management
Planning

Enclosure

# EXHIBIT 2

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

JENNIFER S. RECINE
DIRECT DIAL: (212) 506-1916
DIRECT FAX: (212) 500-3416
JRECINE@KASOWITZ.COM

1633 BROADWAY

NEW YORK, NEW YORK 10019

(212) 506-1700

FACSIMILE: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

January 9, 2017

**BY ELECTRONIC MAIL**

Ronald W. Stamm
Los Angeles County Metropolitan Transportation Authority
Principal Deputy County Counsel
Transportation Division
1 Gateway Plaza
Los Angeles, CA 90012

Re:     Sections 2 and 3 Geotechnical Investigation Core Access

Dear Ronald:

I write to request that Los Angeles County Metropolitan Transportation Authority ("LACMTA") continue to provide the Beverly Hills Unified School District ("BHUSD") with equal access to certain information in connection with LACMTA's 2015 seismic fault investigation for Section 2 and its 2016 seismic fault investigation for Section 3 of the Westside Subway Extension Project ("WSE"). Specifically, BHUSD is requesting that LACMTA provide BHUSD's geologists with access to core samples taken by LACMTA's geologists, Amec Foster Wheeler ("AMEC"), during the 2015 and 2016 investigations.

LACMTA provided BHUSD with access to its core samples in the past to allow BHUSD's geologists to conduct their own independent evaluation and side-by-side comparisons of the samples. Indeed, you will recall that BHUSD's 2010 agreement to allow LACMTA a right of entry to conduct drilling beneath the Beverly Hills High School ("BHHS") was premised on LACMTA's agreement to disclose all data generated by the on-site investigation. LACMTA also provided assurances to BHUSD that it would retain all core samples extracted by AMEC during its investigations.

In accordance with LACMTA's agreement, in October 2011, BHUSD received copies of LACMTA's cone penetration testing data, seismograph data and boring logs not yet released in public reports. In May 2012, LACMTA delivered several core samples to BHUSD for a side-by-

Ronald W. Stamm
January 9, 2017
Page 2

side, geological comparison with BHUSD's core samples.  Later that year, LACMTA permitted
BHUSD and City of Beverly Hills geologists, and the California Geological Survey, to visit the
AMEC warehouse (where LACMTA's core samples are stored) and conduct a side-by-side
review of multiple core samples obtained as part of the WSE investigation. Geologists from
AMEC also participated in these side-by-side reviews.

The side-by-side reviews at BHHS and AMEC were important.  They permitted various
inconsistencies between AMEC's boring logs and the actual cores to be resolved, removing the
appearance of faults identified by AMEC in the Century City Fault Investigation.  These findings
could not have been made without access to the core samples.  Physical, side-by-side, geological
comparisons of core samples are part of geological best practices, as they reveal important
commonalities, anomalies, and subtleties in the ground that may not be reflected in draft boring
logs.

Given the advanced status of the procurement process for Section 2, it is critical that
LACMTA provide BHUSD with immediate access to all core samples taken in connection with
its 2015 seismic fault investigation for Section 2 of the WSE.  In addition, BHUSD requests that
LACMTA also provide BHUSD with prompt access to the core samples obtained in connection
with LACMTA's 2016 seismic fault investigation for Section 3 of the WSE so BHUSD's
geologists can conduct their independent and side-by-side review prior to the commencement of
the procurement process for Section 3.

Sincerely,

*/s/ Jennifer Recine*

Jennifer S. Recine

cc:    Jared Pettinato, Esq.
       Philip E. Karmel, Esq.
       Robert Perlmutter, Esq.
       Sara Clark, Esq.